COURT OF APPEALS
DECISION
DATED AND FILED

February 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1480**

Cir. Ct. No. **2004CF599**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL MARIO MILLER, JR.,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Michael Mario Miller, Jr., *pro se*, appeals from a circuit court order denying his WIS. STAT. § 974.06 (2021-22)[1] motion for postconviction relief.  Miller alleges that newly discovered evidence involving police misconduct in an unrelated case warrants a new *Miranda-Goodchild*[2] hearing and a new trial.  Upon review, we affirm.

## BACKGROUND

¶2     The underlying facts of this case have been set forth in our prior decisions resolving Miller's direct appeal and his previous postconviction motion. *See State v. Miller* (*Miller I*), No. 2010AP399-CR, unpublished slip op. ¶¶2-11 (WI App Mar. 15, 2011); *State v. Miller* (*Miller II*), No. 2012AP2619, unpublished slip op. ¶¶2-5 (WI App Mar. 11, 2014).  It suffices to say that in 2004, the State charged Miller with first-degree intentional homicide with the use of a dangerous weapon, as a party to the crime.  The charges stemmed from the shooting death of Marques Messling, who was shot while sitting in the driver's seat of a blue truck in the area of North 31st Street and West Capitol Drive in Milwaukee.

¶3     The State's case partially relied on a confession Miller made to Detective Gilbert Hernandez while in custody.  Miller's trial counsel moved to suppress the confession, and the circuit court held a subsequent *Miranda-Goodchild* hearing.  At the hearing, it was established that Miller initially denied

---

[1]  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  *See Miranda v. Arizona*, 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

involvement in the shooting when first interviewed by a different detective. Hernandez testified that when he conducted a subsequent interview, Miller stated that he wanted to make a statement even though he had a lawyer. Hernandez testified that he reminded Miller of his right to counsel's presence during the interview, but Miller stated that he wanted to cooperate. Miller then made inculpatory statements implicating himself in the shooting. The circuit court denied the suppression motion.

¶4 The matter proceeded to trial where the State presented Hernandez's testimony as a part of its case against Miller. The jury found Miller guilty and the circuit court sentenced Miller to life in prison with an extended supervision eligibility date of February 2, 2054.

¶5 Miller moved for postconviction relief arguing, as relevant to this appeal, that his trial counsel was ineffective for failing to present evidence at the *Miranda-Goodchild* hearing that Miller invoked his right to counsel prior to confessing his involvement in the crime. Following a *Machner*[3] hearing where both Hernandez and trial counsel testified, the circuit court found that counsel did not render ineffective assistance. Miller appealed and we upheld his conviction. *See Miller I*, No. 2010AP399-CR, ¶1.

¶6 Miller later filed a WIS. STAT. § 974.06 motion arguing, as relevant to this appeal, that his trial counsel was ineffective for failing to file a motion to suppress his statement to police. Miller argued that the statement was made after he invoked his right to counsel. The circuit court denied the motion, Miller

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

appealed, and we again upheld the conviction. *See Miller II*, No. 2012AP2619, ¶1.

¶7      In 2021, Miller filed the postconviction motion underlying this appeal arguing that he was entitled to relief based on newly discovered evidence of police misconduct in an unrelated homicide. Specifically, Miller's motion argued that Hernandez's involvement in the 2004 homicide investigation that led to the conviction of William Avery was relevant to his case because Hernandez fabricated evidence against Avery. Avery's conviction was ultimately overturned when physical evidence revealed that another man committed the crime. Avery filed a federal lawsuit alleging that Hernandez fabricated Avery's confession to the homicide as well as statements from jailhouse informants. *See Avery v. City of Milwaukee*, 847 F.3d 433, 437 (7th Cir. 2017). The matter proceeded to trial, where the jury found Hernandez liable for fabricating evidence. *See id.* Miller argued that he was entitled to a new suppression hearing and a new trial because this new evidence was relevant to impeach Hernandez's credibility with regard to whether Miller invoked his right to counsel prior to confessing his involvement in the crime. Following a hearing where Hernandez testified, the circuit court denied the motion on the grounds that Miller failed to show a reasonable probability that the evidence of Hernandez's misconduct would have led to a finding that Miller invoked his right to counsel. In turn, Miller did not show that he was entitled to a new suppression hearing or a new trial. This appeal follows.

## DISCUSSION

¶8      On appeal, Miller argues that the circuit court erred in denying his motion for a new suppression hearing and a new trial. He also argues that the real

controversy involving the invocation of his right to counsel was not fully tried. We disagree.

¶9 To set aside a judgment of conviction, the newly discovered evidence must demonstrate that a manifest injustice occurred. *State v. Watkins*, 2021 WI App 37, ¶42, 398 Wis. 2d 558, 961 N.W.2d 884. We approach claims of newly discovered evidence with great caution. *State v. Morse*, 2005 WI App 223, ¶14, 287 Wis. 2d 369, 706 N.W.2d 152. To prevail, the defendant "must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997), *holding modified by State v. Kivioja*, 225 Wis. 2d 271, 592 N.W.2d 220 (1999). If the defendant satisfies those four requirements, "the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial." *Id.* Our supreme court has explained: "[a] reasonable probability of a different outcome exists if 'there is a reasonable probability that a jury, looking at both the old evidence and the new evidence, would have a reasonable doubt as to the defendant's guilt.'" *See State v. Love*, 2005 WI 116, ¶44, 284 Wis. 2d 111, 700 N.W.2d 62 (citation and two sets of brackets omitted). We review the circuit court's decision on a newly discovered evidence claim for an erroneous exercise of discretion. *Watkins*, 398 Wis. 2d 558, ¶44. However, whether a reasonable probability of a different trial result exists is reviewed *de novo*. *Id.*

¶10 Miller contends that he "should be permitted to relitigate the *Miranda-Goodchild* issues because the newly discovered evidence … changes how he would litigate those issues" at a new suppression hearing. He also argues that "the newly[]discovered evidence would have so badly impeached the

reliability of Detective Hernandez's testimony of Miller's 'confession' that a different outcome was reasonably probable [at trial]." The circuit court found that Miller satisfied the first four components of the newly discovered evidence test but failed to satisfy the fifth. We agree.

¶11 With regard to the suppression issue, the circuit court found that regardless of Hernandez's tainted credibility, Miller's claim that he invoked his right to counsel prior to confessing was not credible and therefore would not produce a different result at either a new suppression hearing or a new trial. At the *Machner* hearing, Miller initially claimed that he told his attorney that he invoked his right to counsel prior to making inculpatory statements to Hernandez but then admitted on cross-examination that he did not do so. Trial counsel testified that Miller never told her that he told Hernandez he wanted to invoke his right to counsel and was unwilling to give a statement. Trial counsel said that during the *Miranda-Goodchild* hearing, Miller did not contradict Hernandez's testimony and, in fact, told trial counsel that Hernandez's testimony was accurate. Thus, while the circuit court agreed that Hernandez's credibility was blemished, its assessment of trial counsel's credibility remained unchanged. Moreover, Miller did not expressly state that he was coerced or tricked into confessing. In short, the circuit court found that the outcome of the suppression hearing would have been the same because there was no credible evidence supporting Miller's position. A circuit court's credibility assessments are generally unassailable. *See Turner v. State*, 76 Wis. 2d 1, 18, 250 N.W.2d 706 (1977).

¶12 Because Miller fails to show that the evidence presented in the postconviction proceedings would have altered the outcome of the suppression hearing, it follows that the evidence does not support a reasonable probability of a different result at trial. The confession would not be suppressed; thus, the jury

would still hear Miller's statements admitting his guilt along with evidence that multiple accomplices incriminated him. Four accomplices placed Miller at or near the scene. Police testimony established that the accomplices identified Miller as being the man who, along with a co-actor, walked out of an alley to confront Messling in his car about a dispute with their gang. Miller and the co-actor came running back to the alley immediately after the fatal shots were fired and bragged about what they had accomplished as they sped off in the getaway car driven by Miller's cousin. We agree with the circuit court's finding that there was sufficient evidence for the jury to reach the same verdict even without Hernandez's testimony.[4]

## CONCLUSION

¶13 For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Because there is no reasonable probability of a different outcome either at a new suppression hearing or at a new trial, we need not reach Miller's claim that the real controversies were not fully tried.